UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| SAMUEL PHILLIP LEWIS, III, | ) | | |
|---|---|---|---|
| Plaintiff, | ) | | |
| v. | ) | No.: | 2:24-CV-117-CLC-CRW |
| NURSE PRACTITIONER MARTHA, MEDICAL ADMINISTRATOR, MENTAL HEALTH ADVOCATE MCKENZIE, and SHERIFF CASSIDY, | ) | | |
| Defendants. | ) | | |

## **MEMORANDUM & ORDER**

Plaintiff, an inmate in the custody of the Tennessee Department of Correction[1] ("TDOC") currently housed in the Sullivan County Jail, is proceeding pro se and *in forma pauperis* on a civil rights complaint under 42 U.S.C. § 1983 [Docs. 1, 5]. Plaintiff's complaint is before the Court for screening in accordance with the Prison Litigation Reform Act ("PLRA") to determine whether it states a justiciable claim. *See, e.g.,* 28 U.S.C. §§ 1915(e) and 1915A. For the reasons set forth below, the Court finds Plaintiff's complaint fails to state a claim and **ORDERS** Plaintiff to file an amended complaint if he wishes to further pursue this action.

---

[1] The Court takes judicial notice that the Tennessee Department of Correction designates Plaintiff as a convicted inmate. *See* Tenn. Dep't of Corr., *Felony Offender Information,* https://foil.app.tn.gov/foil/search.jsp (last visited Aug. 6, 2024) (search by name); *see also Oak Ridge Env't Peace All. v. Perry*, 412 F. Supp. 3d 786, 810 n.6 (E.D. Tenn. 2019) ("Information taken from government websites is self-authenticating under Fed. R. Evid. 902, and courts may accordingly take judicial notice of the information found on these websites." (citations omitted)).

## I. SCREENING OF COMPLAINT

### A. Screening Standards

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pleaded and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must establish that a "person" acting "under color of" state law deprived him of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983.

B.  **Plaintiff's Allegations**

When Plaintiff was booked into the Sullivan County Jail on February 28, 2024, he "made medical staff aware that [he] ha[s] serious medical issues[,]" including a diagnosis of post-traumatic stress disorder ("PTSD"), bipolar disorder, mood disorder, and antisocial personality disorder, for which he took the prescribed medications Depakote ER and Wellbutrin [Doc. 1 at 1]. After medical staff received his pharmacy records, they ordered Depakote ER for Plaintiff but refused to order the Wellbutrin "due to [Plaintiff's] past history of hoarding [his] medications" [*Id.*]. But Plaintiff "was never caught or accused of this before" [*Id.* at 1–2].

After Plaintiff filed multiple sick-call requests, medical staff ordered Plaintiff to receive the medication Effexor after advising Plaintiff that "the facility doesn't allow inmates to take Wellbutrin due to abuse and hoarding by inmates" [*Id.* at 2]. But medical and correctional staff watch as all medications are dispensed, and they "control[] all aspects of what is done in the facility" [*Id.*]. Plaintiff has taken Depakote ER and Wellbutrin "for numerous years[,]" and it is "not [his] fault that staff can't control the actions of inmates at this institution to prevent medication abuse" [*Id.*]. Plaintiff "do[es] not respond well to any other medications," even though he has tried over two dozen different types [*Id.*].

Plaintiff voiced to mental health advocate McKenzie his concerns about the side effects he was experiencing taking Effexor, and he was having "no positive results" with the medication [*Id.* at 3]. He requested therapy, but Ms. McKenzie told Plaintiff "that this facility does not provide mental health therapy" [*Id.*].

On June 20, 2024, Nurse Practitioner ("NP") Martha and Licensed Practical Nurse ("LPN") Stephanie saw Plaintiff, and NP Martha told Plaintiff she would stop the Effexor order, order Depakote ER for Plaintiff, order Plaintiff to receive a Depakote-level blood test in thirty days, and

3

order Wellbutrin for Plaintiff [*Id.*]. On June 21, 2024, Nurse Karen came to Plaintiff's cell to give him his medications, and Plaintiff inquired about his new medication order [*Id.*]. Nurse Karen showed Plaintiff "on her laptop" that only Depakote had been ordered for Plaintiff [*Id.*].

At around 1:30 p.m. on June 21, Plaintiff "had another inmate use his phone account to call" Plaintiff's seventy-nine-year-old mother [*Id.* at 7]. Plaintiff's mother, who has a bad heart, told Plaintiff that her sister—Plaintiff's Aunt Dorthy—died on Father's Day [*Id.*]. Plaintiff was "very emotional over [his] aunt[']s death and worried about" his mother, so Plaintiff asked a corporal if he could use the phone in booking due to his indigence [*Id.*]. The corporal would not allow Plaintiff to use the phone, which left Plaintiff very unstable and depressed [*Id.*].

Then, at around 3:00 p.m., Plaintiff filed a grievance to the medical department about his missing Wellbutrin order [*Id.* at 3, 4]. And at approximately 7:00 p.m. that evening, when Nurse Anna came to Plaintiff's cell to give medication to Plaintiff's cellmate, Plaintiff again asked about his medication order [*Id.* at 4]. Nurse Anna showed Plaintiff "on the laptop" that his "name was no longer in the computer[,] and that there was no longer a medication order for [him]" [*Id.*]. Plaintiff believes the Depakote medication order was removed to retaliate against him for filing a grievance earlier that day [*Id.*].

At around 7:30 p.m. on June 21, Plaintiff asked another corporal if he could use the phone, and the corporal told him he could [*Id.* at 7]. But no one came to Plaintiff's cell to escort him to the phone, so Plaintiff inquired about his phone call every thirty minutes when Officer Larkins did security checks [*Id.*]. Still, Plaintiff never received his phone call [*Id.*].

Before Plaintiff was released on parole in September 2023, he was on protective custody because gang affiliations "have a hit out" on him [*Id.* at 4]. So, when he was booked into the Sullivan County Jail in February 2024, he was placed on administrative segregation "for safety

4

reasons" [*Id.*]. But due to "being housed in the same cell as disciplinary segregation inmates[] and gang members, as well as untreated mentally handicapped inmates non-compliant with medications[,]" not to mention that he did not receive his "proper" mental health medications, Plaintiff has "been left feeling anxious, depressed, hopeless, and helpless" [*Id.* at 4–5].

Plaintiff is housed "in a cell 23 out of 24 hours a day with violent offenders simply because [he] ha[s] mental health issues that [a]ffect [his] safety in general population" [*Id.* at 5]. He should be housed "with other inmates such as [him]self" and not "with disciplinary segregation inmates" [*Id.*]. But Plaintiff fears that any further complaints would result in his being placed on suicide watch, because the facility sometimes houses up to nine naked men on suicide watch in one ten-by-eight cell, with no constant monitoring [*Id.* at 6]. In fact, approximately two months before Plaintiff filed this lawsuit, an inmate "stomped another inmate to death in the suicide cell because they were left unobserved for a period of time" [*Id.*].

These "type of actions" "greatly increase[] [Plaintiff's] chemical imbalance and cause[] [him] to feel extreme emotions that are left untreated without medications and therapy" [*Id.* at 8]. Aggrieved by these circumstances, Plaintiff filed this action against NP Martha, the Medical Administrator, Mental Health Advocate McKenzie, and Sheriff Cassidy [*Id.* at 5] seeking monetary damages "for deliberate indifference" and "willful disregard" to Plaintiff's "serious medical need[s]" [*Id.* at 6, 9].

**C.     Analysis**

Although Plaintiff only explicitly raises a claim that Defendants acted with deliberate indifference to his medical needs, a liberal construction of Plaintiff's complaint requires the Court to address several other allegations presented by Plaintiff. The Court addresses these allegations first before turning to Plaintiff's medical-care claims.

5

### 1. Inability to Use Telephone

Plaintiff alleges that on June 21, 2024, one corporal would not allow him to use the telephone, while another corporal told Plaintiff that he could use the telephone but never arranged for Plaintiff to do so [Doc. 1 at 7]. But prisoners have no constitutional right to unrestricted telephone use. *See, e.g., Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994). Instead, "a prisoner's right to telephone access is subject to rational limitations in the face of legitimate security interests of the penal institution. The exact nature of telephone service to be provided to inmates is generally to be determined by prison administrators, subject to court scrutiny for unreasonable restrictions." *Id.* (internal punctuation marks and citations omitted). And "[t]he burden . . . is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton v. Bazzetta*, 539 U.S. 126, 131–32 (2003). Here, Plaintiff has not alleged any facts that would permit a plausible inference that his constitutional rights were violated by Defendants' refusal to allow him to use the telephone on June 21, 2024, and this claim will be **DISMISSED**.

### 2. Retaliation

Plaintiff states that he believes his order for the medication Depakote was removed to retaliate against him for filing a grievance regarding the omission of the medication Wellbutrin from his orders [Doc. 1 at 4]. To establish a retaliation claim, Plaintiff must show that: (1) he "engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

6

Case 2:24-cv-00117-CLC-CRW   Document 6   Filed 08/20/24   Page 6 of 12   PageID #: 27

The Court assumes without deciding that Plaintiff engaged in protected conduct by filing a grievance. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) (holding prisoner has a right to file non-frivolous grievances). But even assuming that Plaintiff's medication order was deleted, and assuming that action was sufficiently adverse, he has not alleged any facts to support an inference that one or more Defendants acted with a retaliatory motive to delete his medication order. And "conclusory allegations of [a] retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)). Therefore, Plaintiff's retaliation claim will be **DISMISSED**.

### 3. Administrative Segregation

Plaintiff, who is in administrative segregation for safety reasons, contends that he should not be housed with inmates who are disciplinary problems, in gangs, or who have untreated mental health issues [Doc. 1 at 4–5, 6]. This allegation implicates the constitutional principle of due process and the constitutional prohibition against cruel and unusual punishment.

To state a claim for violation of his due process rights, Plaintiff must show that being deprived of a protected right or interest imposes on him an "atypical and significant hardship" relative to the ordinary circumstances of prison life. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). But Plaintiff has no liberty interest in either his housing placement or security classification. *See, e.g., Montanye v. Haymes*, 427 U.S. 236, 242 (1976). And the Court of Appeals for the Sixth Circuit has stated that "administrative segregations have repeatedly been held not to involve an 'atypical and significant' hardship implicating a protected liberty interest without regard to duration." *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998) (citations omitted). Accordingly, Plaintiff's placement in administrative segregation does not state a plausible due process claim, and this claim will be **DISMISSED**.

7

Neither has Plaintiff plausibly alleged that his placement in administrative segregation violates the Eighth Amendment's prohibition against cruel and unusual punishment. *See* Const. amend. VIII. Such a claim has both objective and subjective elements. *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

Objectively, "the Constitution does not mandate comfortable prisons[.]" *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Accordingly, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Instead, only conditions of confinement that involve "the wanton and unnecessary infliction of pain," that are "grossly disproportionate to the severity of the crime," or that result in the denial of the "minimal civilized measure of life's necessities" will violate the Eighth Amendment. *Rhodes*, 452 U.S. at 346–47. Here, Plaintiff complains that he should not have to be housed with inmates with disciplinary infractions or untreated mental illnesses, but he does not allege that he has been denied any basic human needs by his placement. And without showing that his basic human needs have not been met, Plaintiff's placement in administrative segregation fails to state an Eighth Amendment claim. *See Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008); *Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011).

Additionally, to satisfy the subjective element, the plaintiff must establish that the prison official acted with a sufficiently culpable state of mind—that of deliberate indifference. *See Wilson*, 501 U.S. at 303; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Richmond*, 450 F. App'x at 455 ("The subjective component requires the plaintiff to demonstrate that the prison officials acted wantonly, with deliberate indifference to the plaintiff's serious needs."). That is, Plaintiff must allege that "the official . . . [is] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*,

511 U.S. at 837. Plaintiff does not allege that he faces a substantial risk of harm in administrative segregation, that he made any prison official aware that he has a fear of harm, or that any prison official knew of and disregarded the risk to Plaintiff. And, in fact, Plaintiff alleges that he was placed on administrative segregation to ensure his safety. Moreover, it does not appear that Plaintiff has even requested alternate housing, as he states that he is afraid that he will be placed on suicide watch if he complains [*See, e.g.,* Doc. 1 at 6]. Therefore, Plaintiff has met neither the subjective nor the objective elements of a claim for deliberate indifference regarding his housing, and this claim is **DISMISSED**.

### 4. Medical/Mental Health Care

This leaves the Court to consider Plaintiff's expressly stated claim—that Defendants acted with "deliberate indifference" and "willful disregard" to Plaintiff's medical needs [Doc. 1 at 6, 9]. As noted above, to demonstrate deliberate indifference, a prisoner must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. But because only acts or omissions that produce an "unnecessary and wanton infliction of pain" implicate the Eighth Amendment, *Wilson*, 501 U.S. at 297, a prisoner cannot state a claim of deliberate indifference by suggesting that he was misdiagnosed or not treated in a manner he desired, *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997) (finding "[m]isdiagnoses, negligence, and malpractice" are not "tantamount to deliberate indifference"). As the Supreme Court has explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become

9

> a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976) (internal quotation marks omitted).

Here, Plaintiff complains that the Sullivan County Jail staff would not give him the specific medications he was taking at the time he was booked into custody. But Plaintiff has no constitutional right to a particular medication. *See, e.g., United States ex rel. Hyde v. McGinnis*, 429 F.2d 864, 867–68 (2d Cir. 1970) ("The prisoner's right is to medical care—not the type or scope of medical care which he personally desires."); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (finding that "inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise independent medical judgment" (citation omitted)). Therefore, the mere fact that the Sullivan County Jail staff would not prescribe Plaintiff the medication he desires does not state a constitutional claim.

It is also apparent that Plaintiff has received some medical mental health care, as he was prescribed Effexor, was removed from that medication when he complained about its side effects and lack of efficacy, and then was prescribed both Wellbutrin and Depakote [*See* Doc. 1 at 3]. Although Plaintiff complains that "the laptop" subsequently failed to show both prescription orders, and then, after he complained, there were no prescription orders for him, [*see Id.* at 3, 4] Plaintiff does not implicate any named Defendant in the allegations that his prescription medications were withdrawn. Plaintiff states only that NP Martha agreed to order Wellbutrin and Depakote for Plaintiff. But he does not allege that she failed to do so, or that she ordered the prescriptions and then removed the orders from the system. Neither does Plaintiff allege facts to allow the plausible inference that the prescription orders were deliberately withdrawn with a disregard for his serious mental health needs, as opposed, for example, to there being a medical

determination that the medications were not warranted or a glitch in the computer system that day that failed to show all medication orders. Plaintiff also does not disclose whether he is currently taking any mental health medications, or whether any mental health medications were suggested or offered after the June 21 incident in which he saw that there was no medication order for him on the nurse's laptop. Therefore, without more, the Court cannot find that any named Defendant knew of a serious risk to Plaintiff's health or safety and failed to take reasonable measures to abate that risk—either about his medication requests or his request for therapy. Accordingly, Plaintiff's allegations fail to state a claim upon which relief may be granted.

     **5.**     **Amendment**

Despite the deficiencies in Plaintiff's initial complaint, the Court will **PERMIT** Plaintiff an opportunity to file an amended complaint setting forth additional factual detail that may support a finding that one or more Defendants have acted with deliberate indifference to his serious medical or mental health needs. Therefore, if Plaintiff wishes to further pursue this action, he is **ORDERED** to file an amended complaint by **August 30, 2024**, with a short and plain statement of facts setting forth who allegedly violated his rights, what specific action or inaction each Defendant took that violated his rights, how each Defendant knew that the action or inaction posed a risk to Plaintiff, and how each Defendant disregarded the risk. The Clerk will be **DIRECTED** to mail Plaintiff a § 1983 complaint form for this purpose.

Plaintiff is **NOTIFIED** that the Court will only address the merits of Plaintiff's claims that relate to his original complaint. Accordingly, Plaintiff **SHALL NOT** attempt to set forth in his amended complaint any additional claims that do not relate to his original complaint, and he is advised that any such claims will be **DISMISSED**. Further, Plaintiff is **NOTIFIED** that any amended complaint will be the sole operative complaint that the Court considers, and therefore, it

11

Case 2:24-cv-00117-CLC-CRW   Document 6   Filed 08/20/24   Page 11 of 12   PageID #: 32

**must** be complete in and of itself and must not refer to any previously filed allegations or pleadings.

Plaintiff is **NOTIFIED** that if he does not file an amended complaint by the deadline, the Court will **DISMISS** this action for failure to prosecute and comply with an order of the Court.

## II.     CONCLUSION

For the reasons set forth above:

1. On or before August 30, 2024, Plaintiff must file an amended complaint in accordance with the directives above if he wishes to further pursue this action. The Clerk is **DIRECTED** to send Plaintiff a § 1983 form for this purpose;

2. If Plaintiff fails to timely submit an amended complaint, this action will be dismissed for failure to state a claim and for failure to comply with an Order of the Court; and

3. Plaintiff must immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

**SO ORDERED**.

**ENTER:**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**